United States District Court
Southern District of Texas
**ENTERED**
December 06, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **FRONTIER DRILLING LLC,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:22-CV-02497 |
| | § | |
| **XTO ENERGY, Inc.,** | § | |
| | § | |
| Defendant. | § | |
| | § | |

## MEMORANDUM & ORDER

Plaintiff Frontier Drilling LLC brings this action for breach of contract.[1] Pending before the Court is Defendant XTO Energy, Inc.'s Motion for Summary Judgment (ECF No. 37). For the reasons set forth below, the Court **GRANTS** Defendant's Motion. Plaintiff's claims are dismissed in full.

### I. FACTUAL BACKGROUND

This dispute concerns an alleged contract between Plaintiff Frontier Drilling LLC ("Frontier") and Defendant XTO Energy, Inc. ("XTO") regarding an oil drilling rig.

Frontier is a private energy drilling contractor. ECF No. 37 at 9. XTO is an oil and gas producer, and a subsidiary of ExxonMobil. *Id.*; ECF No. 38-1, Deposition of Carl Franklin Brooks ("Brooks Dep.") at 7:8–11. In 2017, the parties entered into a contract pursuant to which Frontier agreed to provide drilling services to XTO by utilizing Frontier Drilling Rig 27 ("Rig 27"). ECF No. 37-1 at 63–70 (the "Original Agreement"). Frontier and XTO amended the Original Agreement several times via a common procedure: the parties would negotiate terms via

---

[1] Plaintiff's original complaint also alleged fraud and unjust enrichment, ECF No. 1 at ¶¶ 29–38, but Plaintiff has since dismissed those claims. ECF No. 35.

1

oral and/or email communications, and then sign a written agreement memorializing those terms. *See* ECF 37-1, Deposition of Glen McAlister ("McAlister Dep.") at 24:9–24; ECF No. 37-1, Deposition of Robert Hammons ("Hammons Dep.") at 62:14–25; 64:13–25; 65:1–21.

In February 2020, Rig 27 moved to a new site where local regulations required the installation of a higher-rated blowout preventer ("BOP"). McAlister Dep. at 62:1–9. Frontier offered to install the required BOP in exchange for a one-year contract extension. *See* ECF No. 38-1 at 40. The parties then discussed this potential amendment to the Original Agreement via oral and email communications.

The discussions proceeded as follows: on February 6, 2020, Frontier's Robert Hammons emailed XTO's Peter Montes stating that the companies' respective employees "have agreed upon a contract extension for Rig 27" in exchange for installation of a new BOP, and confirming that "if acceptable to you [XTO], [Frontier] will send an amendment for execution." *Id.* at 51. Then, on February 12, 2020, Hammons emailed Montes, explaining, "I just got off the phone with Billy and he informed me XTO will need the 10,000 BOP stack immediately. Can we just do an amendment on the stack and another [separate amendment] later?" *Id.* at 40. Montes replied "[y]es sir" and Hammons sent the contract amendment. *Id.* The contract amendment stated:

> Upon your execution below, this letter will serve as an amendment to the Rig 27 Contract between Frontier Drilling and XTO Energy.
>
> Frontier Drilling shall provide a 10,000 lb BOP stack for Rig 27.
>
> Term: Rig 27 Contract shall be extended for 12 months ending December 25, 2021.
>
> All other terms, conditions and provisions of the Contract shall remain the same.

ECF No. 37-1 at 3 (the "Amendment"). Below this text, the Amendment contained two signature blocks: one signed by a Frontier representative, and one left blank for XTO to sign. *Id.*

2

Two days after Frontier sent XTO the Amendment, after not receiving an XTO-signed copy, Hammons reached out to Montes, stating: "We are in the process of taking the 10,000 LB [blowout preventer] to [Rig 27]. Please send me the signed agreement so we can proceed with the installation." ECF No. 38-1 at 42. Montes responded: "please consider this email as authorization to execute the swap from a 5k to 10k BOP. Management is traveling and is in the process of approval." *Id.* Five days later, on February 19, 2020, Frontier installed the higher-rated blowout preventer. ECF No. 37-1, Deposition of Billy Postma ("Postma Dep.") at 54:10–13.

The parties agree that, despite these discussions suggesting that they would sign the Amendment, XTO never executed the Amendment. In the ensuing months, Frontier tried—and failed—to obtain a copy of the Amendment with XTO's signature. In September of 2020, XTO finally informed Frontier that it would not execute the Amendment, and would not pay costs associated with the Amendment's extension of the Original Agreement. As a result, Frontier filed the instant suit, alleging that the parties had reached an agreement in the course of their February 2020 communications, and that XTO breached that agreement, causing Frontier at least $3,000,000 in damages. XTO filed a Motion for Summary Judgment, seeking dismissal of Frontier's breach of contract claims.

## II.     STANDARD OF REVIEW

Summary judgment under Rule 56 "is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting FED. R. CIV. P. 56(c)). A

genuine issue of material fact arises "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The Court must draw all "reasonable inferences . . . in favor of the nonmoving party, but the nonmoving party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007) (internal citation omitted). "[T]he movant bears the initial responsibility of demonstrating the absence of a genuine issue of material fact with respect to those issues on which the movant bears the burden of proof at trial." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718 (5th Cir. 1995). "For any matter on which the non-movant would bear the burden of proof at trial, however, the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Id.* at 718–19. Once the movant meets its "initial burden of demonstrating that there exists no genuine issue of material fact for trial, the burden shifts to the non-movant to produce evidence of the existence of such an issue for trial." *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010).

### III.  ANALYSIS

Defendant maintains that Plaintiff's breach of contract claims fail because (1) the parties never reached an agreement, and (2) in any event, such an agreement would be barred by the statute of frauds. The Court need not decide whether the parties reached an agreement, because even if they did, the statute of frauds would render the agreement unenforceable.

In Texas, the statute of frauds dictates that "an agreement which is not to be performed within one year from the date of making the agreement" is "not enforceable unless the promise or agreement, or a memorandum of it, is (1) in writing; and (2) signed by the person to be

charged with the promise or agreement or by someone lawfully authorized to sign for him." TEX. BUS. & COM. CODE ANN. § 26.01(b)(6), (a).

Here, the parties' date of agreement, if any, was in February 2020. The agreement could not be completed by February 2021, because it contemplated extending the contract until December 25, 2021. Amendment at 3. Therefore, the statute of frauds applies. TEX. BUS. & COM. CODE ANN. § 26.01(b)(6); *see also Kalmus v. Oliver*, 390 S.W.3d 586, 590 (Tex. App.—Dallas 2012, no pet.) ("In deciding whether an agreement is capable of being performed within one year, we compare the date of the agreement to the date when the performance under the agreement is to be completed."). Plaintiff does not contest the statute of frauds' applicability. Instead, it argues that (1) the agreement complies with the statute of frauds and, separately, (2) the agreement is exempted from the statute of frauds under the doctrine of full (or, if necessary, part) performance.

### A. Signature Requirement

The Parties agree that the agreement was in writing, but dispute whether it was "signed by the person to be charged." TEX. BUS. & COM. CODE ANN. § 26.01(a)(2). It is undisputed that XTO did not sign the Amendment itself. Accordingly, in order to meet the statute of frauds' requirements, the Court would need to find that Montes' February 14, 2020 email (reading "please consider this email as authorization to execute the swap [f]rom a 5k to 10K BOP. Management is traveling and is in the process of approval," ECF No. 38-1 at 42) satisfies the signature requirement. For the reasons set forth below, the Court cannot make such a finding.

Plaintiffs correctly point out that email authorization may, in some instances, satisfy the statute of frauds' signature requirement. *Khoury v. Tomlinson*, 518 S.W.3d 568, 579 (Tex. App.—Houston [1st Dist.] 2017, pet. denied); *Perdido Properties LLC on Behalf of Bremer v.*

5

*Devon Energy Prod. Co., L.P.*, 669 S.W.3d 535, 561 (Tex. App.—Eastland 2023, no pet.). In *Khoury*, Plaintiff emailed Defendant a summary of verbal agreements they had previously made, and Defendant responded with an email stating "We are in agreement." *Khoury*, 518 S.W.3d at 573. The Court of Appeals of Texas first noted that the parties agreed that the Texas Uniform Electronic Act ("UETA") applied. 518 S.W.3d at 575. Under the UETA, if a law (such as the statute of frauds) "requires a signature, an electronic signature satisfies the law." TEX. BUS. & COM. CODE § 322.007(d). Based on the UETA, the *Khoury* court then held that Defendant's "email name or address in the 'from' field satisfie[d] the definition of a signature" for statutes of frauds purposes. 518 S.W.3d at 579.

By its terms, the UETA applies "only to transactions[2] between parties each of which has agreed to conduct transactions by electronic means. Whether the parties agree to conduct a transaction by electronic means is determined from the context and surrounding circumstances, including the parties' conduct." TEX. BUS. & COM. CODE § 322.005(b). In this case, every prior contract and amendment thereto that the parties entered into consisted of a written agreement signed by both parties. McAlister Dep. at 24:9–24; Hammons Dep. at 62:14–25; 64:13–25; 65:1–21. Thus, the parties' conduct does not demonstrate an agreement to conduct transactions via email—it demonstrates quite the opposite, as they never reached an agreement via email, and instead executed a written agreement after each email and oral negotiation. *Id.* The Court therefore finds that the UETA does not apply to the email exchanges between Frontier and XTO. Accordingly, *Khoury* does not dictate the outcome of the present dispute. *See Mitchell v. Mitchell*, No. 03-17-00318-CV, 2018 WL 911866, at *7 (Tex. App.—Austin, Feb. 16, 2018, pet. denied) (finding that the UETA did not apply to alleged agreements at issue and explaining that

---

[2] The UETA defines "transaction" as "an action or set of actions occurring between two or more persons relating to the conduct of business, commercial, or governmental affairs." TEX. BUS. & COM. CODE § 322.002(15).

6

"[b]ecause the *Khoury* court's analysis relies entirely on application of the UETA to the transaction at issue, it has no bearing on the present case").

Even if an electronic signature could satisfy the signature requirement in this case, Montes' February 14, 2020 email cannot be considered such a signature. In *Mitchell*, a Texas appeals court explained that the parties' email communications did not satisfy the statute of frauds, in part because "[Plaintiff's] later email querying whether [defendants] intended to sign the [agreement] belies his contention that any previous emails from [defendants] were intended to constitute their signatures on that document." 2018 WL 911866 at *7. Here, undisputed facts show that (1) the parties were still discussing the terms of the Amendment as of March 3, 2020, ECF No. 37-1 at 75 (email from Hammons to Montes referring to an upcoming "call on the Rig 27 BOP/contract extension"); Hammons Dep. at 136:8–23 (agreeing that "as of March 3rd, 2020, the contract extension had not been finalized" as they were still planning to discuss its terms with XTO), and (2) Frontier followed up with XTO on May 20, 2020, seeking a signed copy of the Amendment, ECF No. 37-1 at 46 (email from Frontier Drilling's Postma to XTO's Montes, forwarding Hammons' February email that asked XTO to "send [Hammons] the signed agreement"). These later communications fatally undermine Frontier's position. Any potential agreement the parties reached in this case does not satisfy the statute of frauds' signature requirement.

## B. Full and Partial Performance Exceptions

Plaintiff alternatively argues that the full or partial performance exceptions defeat Defendant's statute of frauds defense. While "the question of whether an exception to the statute of frauds applies is generally one of fact," *Stovall & Assocs., P.C. v. Hibbs Fin. Ctr., Ltd.*, 409 S.W.3d 790, 798 (Tex. App.—Dallas 2013, no pet.), there are no factual disputes here. Instead,

7

the Court must resolve a question of law—specifically, whether the BOP installation triggers the full or partial performance exception to the statute of frauds.

The full performance exception dictates that the statute of frauds does not apply "where one party has fully performed under the contract and the only thing remaining is performance by the other party." *McElwee v. Est. of Joham*, 15 S.W.3d 557, 559 (Tex. App.—Waco 2000, pet. denied). Here, the alleged agreement contemplated that Frontier would (1) install a higher-quality BOP on Rig 27 and (2) provide Rig 27 for XTO's use through December 25, 2021. ECF No. 37-1 at 3. The parties agree that Frontier installed the BOP, and that Frontier did not provide Rig 27 for XTO's use through December 2021. *See* ECF No. 37-1 at 122–27. Therefore, Frontier did not fully perform under the alleged contract.

"The partial performance exception to the statute of frauds allows for equitable enforcement of a contract that otherwise fails to comply with the statute of frauds when the contract has been partly performed and denial of enforcement would amount to a virtual fraud." *Preston Expl. Co. v. Chesapeake Energy Corp.*, No. CIV.A.H-08-3341, 2009 WL 6443108, at *4 (S.D. Tex. Nov. 3, 2009) (Ellison, J.). For a court to apply this exception, the partial performance must be "unequivocally referable to the agreement and corroborative of the fact that a contract actually was made." *Exxon Corp. v. Breezvale Ltd.*, 82 S.W.3d 429, 439 (Tex.App.—Dallas 2002, pet. denied) (quoting *Wiley v. Bertelsen*, 770 S.W.2d 878, 882 (Tex.App.—Texarkana 1989, no writ)). The acts supporting partial performance "must be such as could have been done with no other design than to fulfill the particular agreement sought to be enforced.*" Id.* at 439–40. In this case, Frontier's founder, Glen McAlister, admitted that Frontier had previously installed a BOP on a different rig for XTO free of charge and without seeking a contract extension. McAlister Dep. at 58:10–18. McAlister explained that this previous BOP installation

8

was a "business decision." *Id.* at 58:17–18. Because Frontier's installation of the BOP on Rig 27 could have similarly constituted a business decision, the Court finds that the installation was not unequivocally referable to the alleged agreement. The partial performance exception does not apply. Defendant's statute of frauds defense prevails.

The Court is sympathetic to Frontier's predicament. They had every reason to believe that XTO would sign the Amendment. Unfortunately, the law offers little flexibility in this case—the statute of frauds renders the alleged agreement unenforceable. Accordingly, Defendant is entitled to summary judgment on Plaintiff's breach of contract claims.

## IV.     CONCLUSION

Defendant's Motion for Summary Judgment is **GRANTED**. This case is therefore **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas on this the 5th day of December, 2023.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE